UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| THE BANK OF BEAVER CITY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 3:03-CV-575 |
| | * | |
| MARY ELIZABETH BRANHAM, | * | |
| ADMINISTRATRIX OF THE ESTATE OF | * | |
| ELMO MAYES, HELEN MAYES, AND | * | |
| ACM, INC., | * | |
| | * | |
| Defendants. | * | |

RESPONSE AND MEMORANDUM OF ACM, INC.
TO MOTION TO DISMISS COUNTERCLAIM

The Defendant, ACM, Inc. ("ACM"), hereby states the following in response to the Motion to Dismiss Counterclaim ("Beaver Motion") filed by the Bank of Beaver City ("Beaver").

INTRODUCTION

ACM's Counterclaim seeks to avoid, as a fraudulent transfer, the lien against Tennessee real estate created by Beaver's recordation of a judgment lien against Elmo Mayes ("Mayes"). Beaver has moved to dismiss the Counterclaim on the grounds that the judgment lien was not obtained through any voluntary act of Mayes and that the absence of such complicit behavior prevents the judgment lien from being a "transfer" as that term is used under the Tennessee fraudulent conveyance statute. According to Beaver's Motion to Dismiss, "As a matter of law, the recording of a judgment lien does not constitute a 'transfer' within the meaning of §66-3-302 T.C.A. because the lien was not created by or with the participation of Mr. Mayes, the debtor." *Motion to Dismiss*, p. 2.

Beaver's motion has no legal foundation and its brief to the Court cites no authority whatsoever for its position. Simply put, the Beaver motion ignores the express and plain statutory language of the Tennessee statute that includes involuntary creation of liens as fraudulent conveyance where the other statutory criteria are satisfied. Given the plain statutory provisions that "as a matter of law" allow ACM to assert its counterclaim and the liberal standard to be applied when analyzing a motion to dismiss, Beaver's motion should be denied.

BACKGROUND

In this action, Beaver seeks to recover an Oklahoma federal judgment it obtained against Elmo Mayes based on his guaranty of a 1998 loan. During this action, Elmo Mayes died. Beaver now seeks to recover the debt from his estate, family and creditors by an amended complaint. This complaint includes allegations that Elmo Mayes made fraudulent transfers to his ex-wife in a divorce and in a lien granted to ACM to secure its loans to Mayes.

On or after July 30, 2003, Beaver recorded its judgment in Tennessee thereby creating a lien against the real estate of Elmo Mayes. In its Counterclaim, ACM alleges that, based on the recording of the judgment lien while Elmo Mayes was insolvent and without consideration to Mayes or his other creditors, the lien constituted a fraudulent conveyance. While it is clear that Beaver has a valid debt to collect against the estate of Elmo Mayes, it is also true there are other creditors of the estate, including ACM, who seek payment of their claims against the estate. Beaver is not entitled to a preferential lien standing ahead of other creditors by the recordation of the lien when the same constituted a fraudulent conveyance under the constructive fraud standards established by the Tennessee statute.

DISCUSSION

    A.    *The Applicable Standard on a Motion to Dismiss*

The case law that has developed over time clearly demonstrates that a motion to dismiss is merely to test the sufficiency of the complaint, and is to be liberally construed in favor of the non-movant with all inferences in favor of the non-movant.

> A motion under *Rule 12(b)(6) of the Federal Rules of Civil Procedure* tests whether a cognizable claim has been pleaded in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).* Under Rule 8(a) of the Federal Rules, a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)*. However, a complaint "need not set down in detail all the particularities of a plaintiff's claim." *Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994)* (quoting *Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976))*. Dismissal of a claim pursuant to Rule 12(b)(6) is appropriate only if it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson, 355 U.S. 41, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* For purposes of a motion to dismiss, the allegations of the plaintiff's complaint are liberally construed and taken as true, and shall be given the benefit of all reasonable inferences. See *Cameron v. Seitz, 38 F.3d 264 (6th Cir. 1994); Westlake, 537 F.2d at 858.*

*WHS Entertainment Ventures, et al. v. United Paperworkers International Union*, 997 F. Supp. 946; 1998 U.S. Dist. LEXIS 3336 (M.D. Tenn. 1998). As such, this Court may only dismiss the Counterclaim if ACM could establish no set of facts that warrant relief. As set forth below, the express language of the Tennessee fraudulent conveyance statute, coupled with ACM's assertion of Mayes' insolvency and inadequate consideration (which must be taken as true), calls for denial of Beaver's motion so that the Counterclaim may proceed to a determination on the merits.

    B.    *The Counterclaim Asserts a Viable Claim for Relief*

The Counterclaim asserts that Beaver's obtaining a judgment lien against Mayes constitutes a fraudulent conveyance under the Tennessee version of the Uniform Fraudulent

Transfers Act ("Act")[1]. The applicable statute includes as fraudulent conveyances not only transfers that were intended to defraud creditors, but transfers that constitute a constructive fraud due to their effect on other creditors. The applicable portion of the Act states as follows:

66-3-305. Transfers fraudulent as to present and future creditors

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

T.C.A. §66-3-305. By the plain language of the statute, one of two events must occur - either a transfer was made or an obligation incurred. The Counterclaim asserts that the recordation of the judgment lien against Mayes constitutes a "transfer." That term is specifically defined in Section 302 of the Act:

(12) "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or **involuntary**, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and **creation of a lien** or other encumbrance;

(emphasis supplied).

Beaver urges that the creation of an involuntary judgment lien cannot be a transfer as a matter of law. Not only does Beaver fail to offer any citation to any authority for its sweeping statement "as a matter of law," but Beaver's statement is absolutely contradictory to the plain and

---

[1] On July 1, 2003, Tennessee repealed its former fraudulent conveyance statutes (TCA §§ 66-3-301 to 66-3-325) and adopted the Uniform Fraudulent Transfers Act (TCA §§ 66-3-301 to 66-3-313).

unambiguous language of the statute cited above. The bold portion of the statute cannot be interpreted in any fashion other than to hold that a "transfer" under the Act includes the **involuntary creation of a lien**. Thus, when one actually resorts to applicable law, it becomes apparent that the involuntary creation of a lien satisfies the definition of a transfer.

While there does not appear to be any Tennessee cases that address the specific fact pattern in this case, case law interpreting the Bankruptcy Code's very similar fraudulent conveyance statute and accompanying terminology, supports the proposition that involuntary liens constitute transfers. The provisions of 11 U.S.C. §548 allows a bankruptcy trustee or a debtor-in-possession to avoid fraudulent transfers using much of the same language as employed by T.C.A §66-3-302.[2] In addition, at the heart of the bankruptcy statute is the term transfer, which is defined in 11 U.S.C. §101(54) - "transfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an

---

[2] 11 U.S.C. §548 provides in pertinent part as follows:

(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B) . . .

(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii) . . .

(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured ; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." *Id*.

An opinion by the United States Bankruptcy Court for the Eastern District of New York discussed the fact that involuntary liens are clearly contemplated within the definition of transfer under the bankruptcy statute:

> It is well established that under sections 548(a) and 547(b) involuntary as well as voluntary transfers may be avoided, since the Code's definition of "transfer" includes involuntary transactions. According to section 101(40), "'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." S. Rep. 95-989, 95th Cong., 2d Sess. 27 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5813. (emphasis added)
>
> The courts have construed a transfer, as defined in section 101(40) of the Code, which replaced section 1(30) of the Bankruptcy Act of 1898 as amended, former Title 11 § 1(30) (the "Act"), to include the attachment of liens as well as forced sales and they have made clear that such transfers are to be construed as having been made by the debtor. *See Abramson v. Lakewood Bank & Trust Co*., 647 F.2d 547, 548 (5th Cir. 1981); *Durrett v. Washington National Insurance Co*., 621 F.2d 201, 204 (5th Cir. 1980); *In re Wheeler*, 34 B.R. 818, 820 (Bkrtcy. N.D. Ala. 1983); *In re Berge*, 33 B.R. 642, 648 (Bkrtcy. W.D. Wis. 1983); In re Bates, 32 B.R. 40, 41 (Bkrtcy. E.D. Cal. 1983); *In re Coleman*, 21 B.R. 832 (Bkrtcy. S.D. Tex. 1982) (cases determining that nonjudicial foreclosure sales constitute "transfer" under section 548(a)); *In re Carr*, 34 B.R. 653, 656 (Bkrtcy. [**11] D. Conn. 1983) (strict foreclosure sale is transfer); *In re Ewing*, 33 B.R. 288, 291-292 (Bkrtcy. W.D. P.A. 1983) (involuntary sale of stock); In re Gilmore, 31 B.R. 615, 617 (D.C. E.D. Wash. 1983); *In re Evans*, 30 B.R. 744, 745 (Bkrtcy. N.D. Ohio 1983) (judicial lien as transfer under section 547(b)); *In re Worcester*, 28 B.R. 910, 914 (Bkrtcy. C.D. Cal. 1983) (transfer includes disposition of debtor's equity); *In re Richard*, 26 B.R. 560 (Bkrtcy. D. R.I. 1983) (sheriff's sale is transfer); *In re Maytag Sales and Service, Inc*., 23 B.R. 384, 388 (Bkrtcy. N.D. Ga. 1982) (garnishment of debtor's bank account is transfer under section 547(b)); *In re Perdido Bay Country Club Estates, Inc*., 23 B.R. 36 (Bkrtcy. S.D. Fla. 1982) (transfer of title at foreclosure sale is transfer); *In re Smith*, 21 B.R. 345, 351 (Bkrtcy. M.D. Fla. 1982) (sheriff's sale of debtor's home was transfer); *In re Suppa*, 8 B.R. 720, 722 (Bkrtcy. D. R.I. 1981) (attachment of judgment lien is a transfer under section 547(b)) . . . .

*In re Franks*, 39 B.R. 166, 169-70 (Bankr. E.D.N.Y. 1984).

Of particular interest is *In re Evans,* 30 B.R. 744, 745 (Bkrtcy. N.D. Ohio 1983). That case is perfectly on point to the facts of this case. In *Evans,* a creditor obtained and recorded a judgment lien against a debtor (and his real estate) approximately one month before the debtor's bankruptcy filing. The debtors sought to avoid the judicial lien using the trustee's avoidance powers under the Bankruptcy Code. While the court's opinion did not engage in a discussion of specific avoidance statutes, it did address the relationship between an involuntary judicial lien and the definition of "transfer" by stating:

> Based upon the Debtors' Memorandum and the Court's understanding of the Code, the filing of a judicial lien against property is indeed a transfer as intended by the Code. Section 101(40) defines transfer in the following manner:
>
>> "(40) 'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property *or with* an interest in property, including retention of title as a security interest."
>
> Clearly, the placing of a lien on property is, in essence, the taking of an interest in that property. *Harris v. Hoffman, 379 F.2d 413 (8th Cir. 1967); In re Cofax Corp., 96 F. Supp. 420 (S.D.N.Y. 1951).*

*Id.*

Given that the definition of transfer as it is found in both the Bankruptcy Code and the Tennessee fraudulent conveyance statute are essentially identical in their scope and both are used in support of fraudulent conveyance statutes that contain largely identical language, it is difficult to comprehend a situation where a transaction that is a "transfer" under the federal law would not equally constitute a "transfer" under the state law. Based upon the foregoing analysis and coupled with the fact that the Tennessee statute expressly states that a "transfer" includes an involuntary lien, there should be no doubt that ACM's Counterclaim asserts a viable claim.

While not necessarily relevant to the analysis, ACM feels compelled to respond to the slippery slope argument made by Beaver. Beaver contends that if ACM is allowed to avoid

Beaver's judgment lien as a fraudulent conveyance, "then every time a judgment creditor filed an abstract of its judgment, it would amount to a fraudulent conveyance to other creditors." *Beaver Memorandum* at p.2. Actually, Beaver's characterization does not accurately reflect ACM's position or the state of the law. The involuntary creation of the lien by the recordation of a judgment only satisfies the definition of the term "transfer" under the statute. Satisfying the definition of the term transfer does not equate to a fraudulent conveyance since there are additional statutory requirements that must be established for that "transfer" to be deemed a "fraudulent conveyance." In this case, these elements largely consist of a showing of insolvency either at the time of the recordation or by reason of the same.

One of the main purposes of fraudulent conveyance statutes is to undo transfers of assets that prevent other creditors from being paid if the transfer that was made with respect to an insolvent debtor who received no or inadequate consideration for the transfer. If in the case of a judgment debtor there were more assets than there were debts, the recordation of a judgment against certain of those assets would not be against an insolvent party and would not prejudice creditors so as to allow the transfer to be attacked. Unfortunately, there does not appear to be enough assets in the estate to pay the creditors in this caes. This is self evident by Beaver's own causes of action which include fraudulent transfer actions against the ex-wife and creditors of its now deceased judgment debtor.

ACM asserts that the transfer in question falls within the purview of Section 305(a)(2) which provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

ACM asserts that the transfer occurred without receiving reasonably equivalent value (Subsection (a)), at a time when Mayes was insolvent. The Court must bear in mind that, for the purpose of ruling on Beaver's Motion to Dismiss, it need not resolve the underlying question of whether there was reasonably equivalent value given or whether Mayes was insolvent. Under the applicable standard for consideration of a motion to dismiss, those allegations must be taken as true. Thus, with those facts assumed, it becomes abundantly clear that ACM states a claim upon which relief can be granted.

Finally, it should be noted that if ACM ultimately prevails on the merits by avoiding the Beaver judgment lien on the Tennessee real estate this event will not prevent Beaver from receiving *pro rata* payment of its judgment from the estate. If as Beaver contends in its complaint certain real estate and other assets are properly included in the Elmo Mayes estate, then Beaver may be paid to the extent those assets can be sold and net proceeds generated to pay creditors. The difference is that Beaver will not be entitled to be paid first as a lien creditor, but simply treated equally with all other creditors of the estate including ACM, Helen Mayes[3] and other ordinary creditors of the estate.

---

[3] In its complaint, Beaver attacks the transfer of assets to Helen Mayes by a divorce decree and to ACM by the granting of a deed of trust lien. If Beaver would prevail in those claims, that would also not prevent Helen Mayes and ACM from being paid their claims any more than would be the case for Beaver upon the avoidance of its lien.

CONCLUSION

The plain and unambiguous language of the Tennessee statute plus federal case law interpreting the same terminology demonstrates that obtaining a judgment lien constitutes a transfer for purposes of fraudulent conveyance law. ACM's Counterclaim asserts that the "transfer" in question was without adequate consideration and made at a time when Elmo Mayes was insolvent. Case law requires a court to accept those allegations as true in considering the request for dismissal. Under such circumstances, there can be no doubt that the Counterclaim asserts a set of facts that would entitle ACM to its requested relief. The Motion to Dismiss must be denied.

WHEREFORE, ACM requests the following relief:

(a) Beaver's Motion to Dismiss be denied and the Counterclaim allowed to proceed on the merits; and

(b) ACM be granted such other relief, both legal and equitable, as may be just.

ACM, Inc.
By Counsel

LEWIS, GLASSER, CASEY
 & ROLLINS, PLLC

 /s/ John A. Rollins
BB&T Square, Suite 700
300 Summers Street
P.O. Box 1746
Charleston, WV 25326-1746
Telephone: (304) 345-2000
 Facsimile: (304) 343-7999
 Email: jrollins@lgcr.com

## CERTIFICATE OF SERVICE

The undersigned does hereby state that on this 3rd day of June, 2005, the foregoing was served upon the following by electronic service via CM/ECF:

Michael S. Lattier
Hunter, Smith & Davis, LLP
Post Office Box 3740
Kingsport, TN  37662-0740

N. David Roberts, Jr.
Bailey, Roberts & Bailey, PLLC
Post Office Box 2189
Knoxville, TN  37901

/s/ John A. Rollins
_____
John A. Rollins