UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

THE BANK OF BEAVER CITY,     )
     )
        Plaintiff,     )
     )
v.     )     No.: 3:03-CV-575
     )     (VARLAN/SHIRLEY)
MARY ELIZABETH BRANHAM,     )
ADMINISTRATRIX OF THE ESTATE     )
OF ELMO MAYES, HELEN MAYES,     )
and ACM, INC.,     )
     )
        Defendants.     )

## MEMORANDUM OPINION

This civil action is before the Court on the Joint Motion and Memorandum for Abstention of Consideration of Domestic Relations and Estate Matters in Pending in State Court Proceeding [Doc. 51] filed by defendants Helen Mayes and Mary Elizabeth Branham, Administratrix of the Estate of Elmo Mayes. The defendants request the Court to abstain from adjudicating domestic relations and estate matters in this action that are pending in the Circuit Court and Probate Court of Claiborne County, Tennessee. The plaintiff has filed a brief in opposition [Doc. 55] to the joint motion for abstention and the defendants have filed a reply brief [Doc. 57]. The plaintiff has filed a Motion to Strike [Doc. 58] the affidavit of Helen Mayes and defendant Helen Mayes has responded in opposition to that motion [Doc. 59]. Thus, these matters are now ripe for adjudication.

For the reasons set forth herein, the defendants' joint motion for abstention will be **granted** and the plaintiff's motion to strike will be **denied**.

## I.    Relevant Facts

The Bank of Beaver City filed this action on November 6, 2003, against Elmo Mayes and Helen Mayes based on diversity jurisdiction and asserting claims of fraudulent conveyance, fraud, abuse of process, and an action to enforce judgment lien [Doc. 1]. Generally, the case arises from the Bank's attempts to collect a judgment entered against Elmo Mayes in the State of Oklahoma and the Bank's contention that much of the Mayes' marital property was improperly conveyed to Helen Mayes in an attempt to avoid execution. It appears that Helen Mayes filed for divorce on October 21, 2002 in the Circuit Court of Claiborne County, Tennessee.  A final decree of divorce was entered on January 14, 2003 and much of the real and personal marital property was transferred to Helen Mayes.  On May 17, 2004, while this case was pending, Elmo Mayes died.  On March 31, 2005, the plaintiff filed an amended complaint [Doc. 35] asserting claims against defendants Helen Mayes, Mary Elizabeth Branham as the Administratrix of the Estate of Elmo Mayes, and ACM, Inc., a creditor of the estate owned by Tony Mayes, the son of Elmo & Helen Mayes.

Defendants have filed the Affidavit of Elizabeth Branham, Administratrix for the Estate of Elmo Mayes [Doc. 54].  Ms. Branham states that Mr. Mayes' estate is currently being administered in the Probate Court for Claiborne County, Tennessee and that she is charged with administering claims asserted against the estate.  Ms. Branham states that the following claims have been asserted against the Mayes Estate as follows: (1) a claim filed on June 2, 2005 by First State Financial in the amount of $664,884.24, which is comprised of five individual claims and which are variously secured by deeds of trust upon real estate

2

in Claiborne and Hawkins Counties, Tennessee; (2) a claim filed on April 4, 2005 by The Bank of Beaver City in the aggregate amount of $486,737.45, for which a judgment lien has been filed in Hawkins and Claiborne Counties, Tennessee; (3) a claim filed on May 12, 2005 by A-1 Concrete in the amount of $215.99; (4) a claim filed on April 15, 2005 by Robert C. Dooley in the amount of $2,700.00; (5) a claim filed on September 2, 2005 by Greene & Greene Cert. Public Accountants in the amount of $35,524.00; (6) a claim filed on or about July 29, 2005 by ACM, Inc. in the amount of $1,767,290.82, which is secured by a deed of trust upon real estate in Claiborne County, Tennessee; and (7) a claim filed on or about July 29, 2005 by ACM in the amount of $238,739.56. [*Id*. at ¶ 2.] Ms. Branham also states that she has received objections to claims that have not yet been resolved including: (a) an exception to the claim of First State Financial filed by the Bank of Beaver City; (b) an exception to the claim of ACM, Inc. filed by the Bank of Beaver City; and (c) an exception to the claim of Greene & Greene filed by the Bank of Beaver City. [*Id*. at ¶ 4.]

Defendants have also filed the Affidavit of Helen Mayes [Doc. 56], the pertinent portions of which will be repeated herein. Helen Mayes married Elmo Mayes on August 12, 1961 and filed a complaint for divorce in the Circuit Court of Claiborne County, Tennessee, on October 21, 2002. [*Id*. at ¶¶ 2-3.] After Mr. Mayes did not respond to the divorce complaint, the Claiborne County Circuit Court held a hearing on January 9, 2003. After the hearing, the Claiborne County Circuit Court awarded a divorce and other relief by a final decree of divorce entered January 14, 2003. [*Id*. at ¶ 3.]

Ms. Mayes is the owner of several parcels of real estate consisting of approximately 270 acres in Hawkins County, Tennessee that the Mayes's acquired in 1980 and 1984. Mr. Mayes' part interest in the Hawkins County property was transferred to Ms. Mayes along with other property by the final decree. [*Id*. at ¶ 5.] Elmo and Helen Mayes borrowed money on several occasions from the First State Bank (now First State Financial) and these loans were secured by deeds of trust granted by the Mayes against some of the real estate they owned in Hawkins County as well as parcels in Claiborne County, Tennessee. [*Id*. at ¶ 6.]

After the divorce, Ms. Mayes states it became difficult to pay all of the obligations coming due to First State. To deal with this problem, Ms. Mayes tried to reduce the amount of the First State notes by selling some of the property. Some buyers were willing to buy 70 acres of the Hawkins County property at full market value, but the fair market value of the property does not exceed the lien of First State. Ms. Mayes was unable to make the sale of the Hawkins County property as the real estate title was clouded given that the Bank of Beaver City had recorded a judgment lien against Mr. Mayes in Hawkins County after the entry of the final decree. In order to allow the sale to be completed and all the proceeds to be paid to First State, Ms. Mayes retained an attorney in Hawkins County who filed a suit in the Chancery Court for Hawkins County on her behalf against the Bank of Beaver City to obtain a release of the cloud on the title of the Hawkins County property. [*Id*. at ¶ 7.] At the Bank's request, the Hawkins County Chancellor transferred the case to this Court on or about August 2, 2004. The case was remanded to Hawkins County pursuant to September 10, 2004 order. [*Id*. at ¶ 8.] After the Hawkins County case was remanded, the matter continued in

4

litigation. During that time, First State declared that Ms. Mayes was in default of the notes and sent her and her counsel various default letters. [*Id.* at ¶ 9.]

Ms. Mayes has borrowed some additional funds from her son or his company to make interest only payments on the First State notes so that it would not foreclose. This was only a temporary measure and she needs to be able to sell some of the property to reduce her obligations. [*Id.* at ¶ 10.] Ms. Mayes was advised by her Hawkins County counsel that the Bank filed in March 2005 another motion to dismiss the Hawkins County case. The Chancellor in the Hawkins County case granted the Bank's motion in August 2005 and entered judgment reflecting his ruling on September 15, 2005. [*Id.* at ¶ 11.]

On September 8, 2005, Ms. Mayes' counsel in Claiborne County filed an action in the Claiborne Circuit Court on her behalf against Mary Elizabeth Branham, Administratrix of the Estate of Elmo Mayes, the Bank of Beaver City, First State Financial f/n/a First State Bank, and ACM, Inc. As set forth in the complaint, that action seeks the following relief: enforcement of the divorce decree; a determination of the validity of the cloud on the title of the Hawkins County property or alternatively that the Claiborne County Circuit Court direct that the competing title claims be sold and the proceeds be paid in order of the outstanding encumbrances against the property; a declaration of the rights, status, and legal relationship of the parties with respect to her property rights held prior to the institution of the divorce action in the event that the final decree or the transfers therein are avoided or altered; further divorce relief in the event the transfers of the marital real estate and other relief granted by the final decree are avoided in whole or in part; a declaration of the rights, status, and legal

relationships of the parties with respect to their claims, liens, and equitable interest with respect to the marital real estate, the property transferred by the final decree, and the property of the estate of Elmo Mayes; sale of the estate property in the event that any of the marital real estate or other property transferred by the final decree should be avoided and held by the estate of Elmo Mayes. [*See* Doc. 51-2.] Ms. Mayes states that the Claiborne County action was filed on the advice of her counsel in order to have a single court that is familiar with her divorce, the Elmo Mayes estate, and the Claiborne and Hawkins County properties determine all of the divorce, estate, and related creditor issues with the participation of the Bank, First State, and all other creditors who hold claims or liens and would be affected by the court's rulings. [Doc. 56 at ¶ 15.]

## II.    Plaintiff's Motion to Strike

On October 4, 2005, plaintiff filed a motion to strike [Doc. 58] the affidavit of Helen Mayes, which was filed on September 30, 2004 in support of the motion for abstention. Plaintiff asserts that Ms. Mayes' affidavit is "self-serving, irrelevant to the issues, and untrue as to a key allegation." [*Id*.] Plaintiff contends that, in contrast to her affidavit, Mr. Mayes testified that he did not move out of the family home until after the divorce was granted, some three months after Ms. Mayes had initially filed for divorce. Plaintiff also contends that the death certificate for Elmo Mayes gives his address as 2680 Hwy. 63, the same address as Helen Mayes. Further, Ms. Mayes is listed on the death certificate as the informant and her relationship to Elmo Mayes is listed as "companion." Plaintiff argues that

6

this information provides strong evidence that Mr. Mayes continued to reside in the family home even after his divorce and that Helen Mayes' affidavit is not credible.

In response [Doc. 59], defendant Helen Mayes argues that there is no basis to strike an affidavit simply because the plaintiff contests the facts set forth in the affidavit or believes there is conflicting evidence. Mayes argues that her affidavit was submitted to establish that she contests the allegation that the divorce was a sham and that she has acted in the state court proceedings identified to prevent interim sales of real property to pay the first lienholder such that a consolidated proceeding in the Claiborne County Circuit Court is appropriate. Mayes argues that a factual dispute over the date or time period of the separation of Helen and Elmo Mayes has nothing to do with the abstention issue before the Court.

Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to strike "any redundant, immaterial, impertinent or scandalous matter" from any pleading. Generally, motions to strike are disfavored and will be denied unless the allegations have "no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1382 (3d ed. 2004). *See Overnite Transp. Co. v. International Bhd. of Teamsters*, 168 F. Supp. 2d 826, 850 (W.D. Tenn. 2001) ("Motions to strike are disfavored remedies to be used sparingly only when the ends of justice requires it."). Where doubt exists as to whether the matter to be stricken raises an

issue of fact or law, the motion should be denied. 5C Wright & Miller, *supra* at § 1382. The

Sixth Circuit has explained the general approach to striking pleadings as follows:

> Partly because of the practical difficulty of deciding cases
> without a factual record it is well established that the action of
> striking a pleading should be sparingly used by the courts. It is
> a drastic remedy to be resorted to only when required for the
> purposes of justice. The motion to strike should be granted only
> when the pleading to be stricken has no possible relation to the
> controversy.

*Brown v. Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)

(internal citations omitted).

With these well-settled principles in mind, the Court has carefully considered the

positions of the parties and has thoroughly reviewed the briefs filed herein. As defendant

Mayes points out, plaintiff's arguments attack the veracity or materiality of her affidavit.

The Court does not find that plaintiff's arguments, even if true, warrant the drastic remedy

of striking defendant Mayes' affidavit. Therefore, the plaintiff's motion to strike [Doc. 58]

will be denied.

### III.    Joint Motion for Abstention

The joint motion for abstention [Doc. 51] presents several arguments as to why this

Court should abstain from adjudicating matters that are currently pending in the Circuit Court

and Probate Court of Claiborne County, Tennessee. First, defendants argue that abstention

is warranted under the domestic relations exception to federal jurisdiction. Second,

defendants argue that the Sixth Circuit favors abstention in cases involving the administration

8

of estates and trusts. Finally, defendants argue that abstention is required by the *Younger* doctrine. Because the Court agrees that abstention is appropriate for more than one reason, the Court need not address all of the arguments raised by the defendants' motion.

A. Domestic Relations Exception

Defendants first argue that abstention is warranted under the domestic relations exception to federal jurisdiction. Defendants argue that both the Sixth Circuit and the district courts within the Sixth Circuit have recognized that there is a domestic relations exception to the exercise of federal diversity jurisdiction. Defendants rely on *McLaughlin v. Cotner*, 193 F.3d 410 (6th Cir. 1999), cert. denied, 529 U.S. 1008 (2000), where the Sixth Circuit affirmed a district court determination that jurisdiction does not exist for domestic relations cases involving divorce, alimony, and child custody matters. *Id*. at 412-13 (citing *Ankenbrandt v. Richards*, 504 U.S. 689 (1992)). Defendants argue that the domestic relations doctrine addressed in *McLaughlin* has been repeatedly applied in other settings where parties attempt to address state law causes of action arising from, or closely related to, prior or existing domestic relations matters. Defendants contend that plaintiff is attempting to collect its judgment against Elmo Mayes by collaterally attacking the divorce proceeding of Helen and Elmo Mayes. Defendants argue that even if the transfers under the divorce were avoided, Helen Mayes would still have a right to a determination of her property rights and such determination would be necessary to determine what assets may still be properly held in the estate of Elmo Mayes.

Plaintiff argues that this is not an appropriate case for abstention from federal jurisdiction, which is the exception and not the rule. Plaintiff suggests that the domestic relations basis for abstention does not apply since this is not a lawsuit between spouses or former spouses who are seeking a declaration of their rights and obligations arising from marital status. Plaintiff relies on the *Ankenbrandt* decision for the proposition that a complaint that does not request the district court to issue a divorce, alimony, or child support decree is appropriate for the exercise of diversity jurisdiction. 504 U.S. at 703. Plaintiff contends that the cases cited by the defendants are inapposite because the present case does not involve a domestic/family unit suing each other. Plaintiff describes this action as seeking, among other things, a judgment finding that a conveyance of property through a default divorce decree was a fraudulent conveyance and that this issue can be decided without deciding how the Mayes' property should be divided under Tennessee's domestic relations laws.

In reply, defendants argue that plaintiff has selectively quoted the *Ankenbrandt* decision and particularly ignores the reasoning that the domestic relations exception is not limited to the granting of a divorce decree but also the modification of such a decree. *See Ankenbrandt*, 504 U.S. at 701-702. In the present case, plaintiff challenges the Mayes divorce decree and seeks to avoid the transfer of property to Helen Mayes ordered by the Claiborne County Circuit Court. Thus, such relief would modify the divorce decree. Defendants also argue that plaintiff's interpretation of *Ankenbrandt* was rejected by the Sixth Circuit in *McLaughlin*, 193 F.3d at 413. Defendants also respond that there is no authority

10

for the plaintiff's proposition that in order for the domestic relations exception to apply, the dispute must be solely between family members.

The Court has carefully reviewed the parties' briefs on this issue and the authorities cited therein. The Court has also carefully reviewed the amended complaint [Doc. 35] to assess the nature of the claims made and the relief sought. Count I alleges that the "conveyance of Elmo Mayes' personal property and real property through the sham of a divorce was a fraudulent conveyance. That conveyance should be set aside." [*Id*. at ¶ 38.] Count II alleges that Elmo Mayes is guilty of actual fraud and seeks compensatory and punitive damages. [*Id*. at ¶¶ 41-42.] Count III asserts a claim against Helen Mayes for abuse of process in fraudulently transferring her husband's property and seeks compensatory and punitive damages. [*Id*. at ¶¶ 44-45.] Count IV asserts an action to enforce the Bank's judgment lien. Specifically, Count IV requests that "[t]he Estate of Elmo Mayes, through its Administratrix, and/or Helen Mayes should be required to sell such personal property and such real property as may be sufficient to satisfy the Bank's Judgment." [*Id*. at ¶ 48.] Count V asserts a fraudulent conveyance claim as to ACM, Inc. and Tony Mayes. Specifically, Count IV requests "[t]he conveyance by Elmo and Helen Mays [sic] to ACM, Inc. via the Deed of Trust was a fraudulent conveyance, and the Deed should be declared void. Likewise, any security interest asserted or held by ACM in the real property described in the Deed, or any other real property owned by the Estate of Elmo Mayes and/or Helen Mayes should be declared void and without effect." [*Id*. at ¶ 51.] Moreover, the prayer for relief requests in part the following:

2. That the conveyance of property to Helen Mayes through the device of a sham divorce be decreed to be fraudulent, null, and void as against Plaintiff and that said personal property and real property be sold and the proceeds of such sale be applied to the satisfaction of Plaintiff's judgment, and in bar of all equity and/or right of redemption;

3. That to secure and impound said property, a writ of attachment be issued by the Court and be levied on said personal property and said real property, and that a restraining order also issue to inhibit and restrain the Defendants from selling, encumbering, or in any other manner disposing of said property or any part thereof;

4. That the conveyance from Elmo and Helen Mays [sic] to ACM, Inc. via the Deed of Trust be decreed fraudulent, null, and void.

[Doc. 35 at p. 12.]

While the plaintiff has asserted claims that, in the abstract, are the types of claims that may be heard by this Court sitting in diversity, the claims in this case all arise from the dissolution of the marriage of Elmo and Helen Mayes and the distribution of assets in the divorce decree. Plaintiff is asking this Court to set aside the Mayes' divorce, to order the sale of the Mayes' real and personal property for plaintiff's benefit in advance of any other creditors, and to set aside a deed of trust. Plainly, these claims and requested relief are seeking a modification of the Mayes' divorce decree, something that is squarely within the domestic relations exception. *Ankenbrandt*, 504 U.S. at 701-702; *McLaughlin*, 193 F.3d at 414 (federal court lacks jurisdiction to hear case that seeks a declaration of rights and obligations arising from marital status). In other words, the plaintiff is asking this Court to step into an arena in which the issues are presently being litigated in the Claiborne County courts and of which the Claiborne County courts have superior knowledge and expertise. Assuming that plaintiff's claims of fraud and fraudulent conveyance are meritorious, the state

courts are well-equipped to deal with them in the context of the divorce decree's distribution of assets and the administration of claims against the Estate of Elmo Mayes. Therefore, for all of these reasons, the Court finds that this case falls within the "domestic relations exception" to diversity jurisdiction and that abstention is therefore appropriate.

      B.    <u>Probate or Estate Exception</u>

Defendants alternatively argue that abstention is appropriate in cases involving the administration of a trust or a decedent's estate on the basis that federal courts do not have probate jurisdiction. Defendants contend that plaintiff's attempt to challenge the divorce transfers could result in some of the real and/or personal property of Helen Mayes becoming part of the estate of Elmo Mayes and therefore subject to administration. Defendants suggest that the power to dispose of the property of the estate must be determined by a state court. *See* Tenn. Code Ann. § 30-2-403. Defendants contend that this case concerns the conflicting claims and liens against a deceased debtor whose estate must attempt to satisfy those claims. The procedure by which Tennessee courts are to address the disposition of estate claims and the sale of real estate and other property of the estate should be allowed to proceed.

Plaintiff argues that this case does not involve the administration of an estate and the only relation to an estate is the fact that one of the parties died during the pendency of the action. Plaintiff points out that both the Federal Rules of Civil Procedure and state law allow for the substitution of a deceased party and the continuation of a cause of action against the deceased party's estate. While acknowledging that federal courts do not generally have probate jurisdiction, the plaintiff is seeking a judgment, in part, against Mr. Mayes' estate

based on tort claims. The fact that any such judgment would have to be paid out of the estate does not, in plaintiff's view, convert this action to a probate matter. Thus, plaintiff argues that abstention is not warranted. [Doc. 55.]

In reply [Doc. 57], defendants argue that the estate abstention doctrine is applicable in that the relief requested in this case is the attachment and sale of property of the Mayes estate that must be administered in that estate to pay creditors that are not parties to the federal action. Relying on *Markham v. Allen*, 326 U.S. 490 (1946), defendants argue the general rule that a federal court may not exercise jurisdiction over a claim, even where the jurisdictional requirements are met, if the court would be put in the position of probating a will or administering an estate. *Id.* at 494. However, federal courts may handle suits establishing the claims against a decedent's estate as long as the federal court does not "interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Id.* Defendants argue that the plaintiff is requesting this Court to create and exercise control over the property of the Elmo Mayes estate and that this request interferes with the administration of the estate. Defendants contend that a determination of what property should be sold, how it is sold, and the priority of unsecured and secured lien creditors of the estate that are to receive the proceeds is a function of the state probate and administration of estates.

Since the completion of the parties' briefing on the pending motion, the Supreme Court decided the case of *Marshall v. Marshall*, 126 S. Ct. 1735 (May 1, 2006), which specifically discusses the probate exception to federal jurisdiction and the Court's *Markham* decision. The *Marshall* decision interprets *Markham* as follows:

> In short, we comprehend the "interference" language in *Markham* as essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*. ...Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Marshall*, 126 S. Ct. at 1748 (internal citations omitted). This pronouncement is clearly applicable to the present case. The plaintiff is requesting this Court to interfere with the administration of the Elmo Mayes estate and direct the sale of the property in the estate for the benefit of the plaintiff over other creditors, matters which are presently pending before the courts in Claiborne County. The *Marshall* Court has clearly stated that this Court cannot administer a decedent's estate or dispose of property that is in the custody of a state probate court. Accordingly, this Court finds that the probate exception to diversity jurisdiction applies and abstention is appropriate.

15

**IV.    Conclusion**

For the reasons set forth above, the Court finds that the plaintiff's motion to strike [Doc. 58] should be denied and the defendants' joint motion for abstention [Doc. 51] is well-taken and should be granted.   This case will be dismissed without prejudice.   Order accordingly.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

16